Joseph C. Ruddy, Jr. v. Commissioner.
Ruddy v. Commissioner
Docket No. 6744-70 SC.
United States Tax Court
T.C. Memo 1971-316; 1971 Tax Ct. Memo LEXIS 13; 30 T.C.M. (CCH) 1355; T.C.M. (RIA) 71316; December 20, 1971, Filed. Joseph C. Ruddy, pro se, 2818 64th Ave., Hyattsville, Md.John J. Weiler, for the respondent. INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: Respondent determined a deficiency in petitioner's Federal income tax for 1968 in the amount of $257.27. Concessions having been made, the only issue for decision is whether expenses totalling $770.20 incurred by the petitioner in 1968 in attending Georgetown University Law Center are deductible as ordinary and necessary business expenses under section 162(a). [1]
*14 Findings of Fact Joseph C. Ruddy, Jr., (hereinafter referred to as "petitioner") was a legal resident of Hyattsville, Maryland, at the time his petition was filed. He filed his Federal income tax return for 1968 with the District Director at Baltimore, Maryland. Petitioner was graduated from Georgetown University in June of 1966 with a major in Public Administration and a minor in Economics. In September of 1966, he enrolled in a Master of Arts degree program in Government at George Washington University. He received his degree in August of 1968. While in the Master's program, the petitioner taught school in Prince George's County on a part-time basis. In December of 1967, the petitioner applied for a position at Federal City College (hereinafter referred to as FCC). It was a new school which was not to begin classes until September of 1968. He spoke with Dr. Irene Tinker Walker who was then the assistant provost for curriculum development. Since no teaching jobs were available, she referred the petitioner to the business manager. The petitioner was hired in February of 1968 and undertook administrative duties. On March 31, 1968, the petitioner applied for admission to the *15 georgetown University Law Center in the Juris Doctor degree program. On his application, he listed himself as a substitute teacher and in a document attached to the 1356 application entitled "Some Plans And Why?", he made the following statement: * * * it seems that the means of affecting [sic] any degree of social progress is necessarily either directly or indirectly related to the law. Whether the social progress be civil rights, poverty, or a change in an unpopular national policy, the means by which this social change is eventually achieved can be categorized as either a positive or negative attempt to influence the law. Mass rallies, freedom marches, block voting, partisan politics, Congressional lobbying, and even lawless riots intend to influence a change in the law. After absorbing four years of rebellious, uncompromising undergraduate school, and two years of maturing graduate school, I am now prepared to work for change within the social system. Profoundly sure that social progress is possible, I intend to vigorously work towards affecting a small share of that progress. Education, politics, and the practice of law are my intended means of influence. The exact order *16 and proportion each one of these will hold in my own social and self-progress, I do not know. However, whether my eventual concentration be education, politics, or law; the study, absorption, and understanding of the past, present, and future evolution of the law is a necessary prerequisite for my quest. In June of 1968, the petitioner had an interview with Dr. William L. Crump who had come to FCC that same month to develop a program for business and to recruit a faculty to execute the program. The petitioner told Dr. Crump he was completing his Master's in Business Administration and that he was interested in working in the Business program. Dr. Crump hired the petitioner to teach freshman courses in Business for September of 1968, in which month the petitioner also enrolled in the evening division of Georgetown University Law Center. He received instruction in Contracts, Torts, Procedure, and Criminal Law totalling 10 credits - the maximum amount allowable in evening school. In the fall of 1968, the petitioner taught five sections of Seminar in Business - three sections at night and two during the day. When Dr. Crump planned the winter quarter schedule, he assigned the petitioner *17 to two sections during the day and two at night. The evening sections were to be conducted on Monday through Thursday beginning at 6:00 P.M. When he learned of the schedule, the petitioner told Dr. Crump he would not be able to teach the evening courses because they interfered with his studies. After the above conflict developed, the petitioner spoke with Valerie Simms in December of 1968. Miss Simms was an assistant professor of Political Science at that time as well as the "Convener" of the Political Science program. As such she was charged with the hiring of faculty in the social science program. Miss Simms ultimately hired the petitioner to assist in the Political Science program. She believed that since he was goint to law school the petitioner could help in planning the curriculum and in counseling students. While the record is devoid of any definitive evidence as to exactly when it began, FCC did develop a pre-law course in the Political Science division. Various courses were offered including Constitutional Law, Civil Rights and Civil Liberties, and Courts and Justice. For the winter quarter of 1970 - 1971, the petitioner taught The American Political System, which is a basic *18 Political Science course, and Civil Rights and Civil Liberties, which comes under the heading of Law, Courts and Politics in the Political Science program. There is some evidence the petitioner taught similar courses as early as the fall of 1970. Opinion The question in issue is one that has often been presented to the Court; namely, whether a taxpayer's expenditures incurred in attending law school are deductible. Section 162(a) provides generally that, "There shall be allowed as a deduction all the ordinary and necessary expenses incurred during the taxable year in carrying on any trade or business." Section 262, which must be considered along with section 162(a), denies any deduction for "personal" expenses. Although the law itself does not specifically relate to educational expenses, the regulations deal directly with such expenses and, hence, take on added significance. Burke W. Bradley, Jr., 54 T.C. 2161357 (1970). [2] These regulations [3] provide that educational expenses are deductible if they maintain or improve skills required by the individual in his employment or other trade or business or meet the express requirements of the employer for the taxpayer *19 to retain his employment relationship, status, or rate of compensation. Sec. 1.162-5(a), Income Tax Regs. However, the above general rule applies only if the expenditures do not fall within specified nondeductible categories. The education must not be required of the taxpayer to meet the minimum educational requirements for qualification in his employment or other trade or business, Sec. 1.162-5(b)(2)(i), Income Tax Regs.; and they must not be "expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business". Sec. 1.162-5(b) (3)(i), Income Tax Regs. Such expenditures are nondeductible "personal expenditures or constitute an inseparable aggregate of personal and capital expenditures". Sec. 1.162-5(b)(1), Income Tax Regs.
*20 In a well-ordered brief, the petitioner argues that his attendance at law school in 1968, (1) maintains or improves the skills required by him in his employment or other trade or business, (2) meets the express requirements of his employer to retain his employment relationship, status, or rate of compensation, (3) was not required by him to meet minimum education requirements, and (4) that his primary purpose in attending school was to maintain or improve his skills as a teacher and not to qualify him as a lawyer. He then argues that the 1967 regulations are invalid because they would deny the deduction where the education "will lead to qualifying him in a new trade or business". The petitioner submits that this objective test and the new regulations should be set aside and the old 1958 regulations containing the subjective "primary purpose" test should be reinstated. We believe that even if the 1967 regulation were invalid and we applied the 1958 regulation to the facts of this case, the petitioner would not be able to deduct the expenditures made for his education in 1968. Under the old regulations [4] the test is a subjective rather than an objective one in that a taxpayer's *21 "primary purpose" in attending school must be to maintain or improve the skills required by the taxpayer in his employment or other trade or business. To determine the primary purpose of the taxpayer, we must consider all of the facts and surrounding circumstances. We have done so in the instant case and are compelled to hold that they do not convince us that the petitioner's primary purpose in attending law school was to maintain and improve his skills. First of all, the petitioner initially applied for admission to law school in April of 1968. At the time he was working for FCC but was not actually teaching any subjects. Consequently, it was difficult *22 to know the exact nature of his "trade or business". Even more importantly, the statement made with his application indicates that he 1358 himself did not know whether his "eventual concentration" would be education, politics, or law. Therefore, we cannot conclude that when the petitioner enrolled in law school his primary purpose was to maintain or improve his skills. Sandt v. Commissioner, 303 F. 2d 111 (C.A. 3, 1962), affirming a Memorandum of this Court; N. Kent Baker, 51 T.C. 243 (1968). Nor do the subsequent facts aid the petitioner. In June of 1968, he was hired in the Business program as a teacher and did not begin teaching until September. When a conflict arose between the business courses he was to teach in the evening during the winter term and his law school work - he stopped teaching in the Business program and secured a new post which did not conflict with his law school studies. This would indicate that at least in 1968 the petitioner did not consider his law school work primarily as a way of maintaining or improving his teaching skills. As to the point raised by the petitioner that the education "meets the express requirements of the *23 individual's employer, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation", we cannot conclude from the record that FCC required the petitioner to enter law school in 1968 for the above reasons. As we have noted, the petitioner shifted from one position to another in 1968 when he finally received a post with the Political Science Department in December. Prior to December of 1968, it is doubtful if anyone at FCC even knew the petitioner was attending law school much less required him to attend and certainly his initial employment as well as his retention by the Business Department was not predicated on his attending law school. Indeed, the differences he had with the head of the business course stemmed directly from the conflict between his attending law school at night and his teaching business courses in the evening. It may well be true, as some of the testimony indicates, that generally a teacher's contract may not be renewed if he does not "produce a book" or secure "an advanced degree". However, in the light of the facts of this case where the petitioner had only just begun to teach and obviously *24 had not himself decided just what course he was going to ultimately pursue, we are not convinced that he attended Georgetown to meet the express requirements of his employer within the meaning of the applicable law and regulations. Additionally, we believe that in applying the 1967 regulations to the facts of this case, section 1.162-5(b)(3) need not be invoked in order to deny the deduction. The facts do not establish that the law courses taken by the petitioner actually maintained or improved his skills. As we have noted, the record shows that his job at FCC was his first full-time job at a school; that he did not begin teaching until September of 1968 in the Business program; that he quit that program in the latter part of 1968 and accepted a position in the Political Science Department. Nowhere in the record is there any evidence of any meaningful relation between what he taught at FCC and what he learned at Georgetown in 1968. The only connection is the remote and vague assumption that a background in law might aid any teacher generally. This does not satisfy the requirement that the education "maintain and improve" the skills required in an individual's employment or other *25 trade or business as set down in the applicable law or regulations. We recognize that much of the petitioner's argument on brief is concerned with the invalidity of section 1.162-5(b)(3) of the regulations, which denies a deduction where the education expenses "will lead to qualifying him in a new trade or business". Those arguments are set forth clearly and effectively. However, we note that even if the validity of the regulations were the only issue involved, this Court has previously upheld them and found that where the education will lead to a new trade or business, the deduction will be denied. Ronald F. Weiszmann, 52 T.C. 1106 (1969), affirmed per curiam 443 F. 2d 29 (C.A. 9, 1971); Jeffry L. Weiler, 54 T.C. 398 (1970); and David N. Bodley, 56 T.C. - (Sept. 23, 1971). Reviewed and adopted as the report of the Small Tax Case Division. To reflect the concessions of the parties, Decision will be entered under Rule 50. 1359 Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise noted.↩
2. Since the tax year here in question is 1968, the current regulations issued in 1967 rather than the 1958 version are applicable, and petitioner is not entitled to the election accorded taxpayers for the years immediately prior to 1968. See, e.g., Burke W. Bradley, Jr., 54 T.C. 216 (1970), and Ronald F. Weiszmann, 52 T.C. 1106↩ (1969), affirmed per curiam - F. 2d - (C.A. 9, 1971). 3. Income Tax Regs.: § 1.162-5 Expenses for education. (a) General Rule. Expenditures made by an individual for education * * * which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, * * * (b) Nondeductible educational expenditures - (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or busines * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * *↩
4. Sec. 1.162-5 Expenses For Education. - (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment.↩